UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION
CIVIL ACTION NO. _____

**COURTHOUSE NEWS SERVICE,**

                        Plaintiff,

v.

**ZACHARY RAMSEY**, in his official capacity as Director of the Kentucky Administrative Office of the Courts,

                        Defendant.

## COMPLAINT

Plaintiff Courthouse News Service ("Courthouse News"), by and through its undersigned attorneys, alleges the following in support of its Complaint against Defendant Zachary Ramsey, in his official capacity as Director of the Kentucky Administrative Office of the Courts ("Defendant").

## INTRODUCTION

1. State and federal courts across the country have historically made new civil complaints available to the press and public as the court received them. This, in turn, enabled the press to report on the contents of those complaints when the public was most interested.

2. Eighth Circuit Judge Bobby Shepherd described this traditional access during oral arguments in *Courthouse News v. Gilmer, et al.,* Case No. 21-2632 (8th Cir. April 14, 2022), a case involving the same issues as here: "There was a time when—and some in this room may

remember it—when you took a pleading to the courthouse and the clerk stamped it physically and it went into different bins and it was available immediately."

3. In the transition from paper filing to electronic filing ("e-filing"), federal courts and many state courts kept the tradition in place, making complaints available as they crossed the virtual intake counter. Some courts, however, failed to account for timely access when they implemented e-filing and instead began withholding newly e-filed civil complaints from the press and public until court staff completed a series of administrative steps commonly referred to as "processing." As a result, all newly e-filed civil complaints are effectively sealed upon receipt, with access often withheld until at least the day after filing and often longer.

4. The First Amendment to the United States Constitution provides the press and public with a qualified right of access to civil complaints. Whether new civil complaints are paper-filed or e-filed, this right of access attaches *on receipt*, when a new filing is submitted to the court. Policies and practices that cause delays in access are subject to constitutional scrutiny, with the defendant bearing the burden of showing that such policies and procedures are essential to preserve an overriding governmental interest and narrowly tailored to serve that interest.

5. Such access is fundamental and essential to accurate and fair news reporting of civil court actions and, thus, vital to the public's ability to monitor the activities of the judicial branch of government. Pervasive access delays impair the ability of the press to perform that important role. When a complaint is withheld, the news it contains grows stale. The public is left unaware that a civil action has commenced and that a litigant has invoked the power of the judicial branch of government.

6. Defendant enforces a policy and practice of withholding access to new civil complaints e-filed in Kentucky's circuit courts ("Circuit Courts") until after clerks have

completed administrative processing. Consequently, access to such complaints is regularly delayed until at least the next day after it was filed.

7.  The delays in access experienced by Courthouse News throughout Kentucky's Circuit Courts, are the result of Defendant's policy and practice of withholding access to new e-filed complaints until after they have been administratively processed by court staff. New complaints e-filed in Kentucky's Circuit Courts sit, often for days, in an electronic database where they are withheld from public view while they await administrative processing by court staff.

8.  These delays are unnecessary, as demonstrated by the federal and state courts across the country, including this Court, that provide access to new complaints on receipt and before administrative processing. Defendant is capable of providing such access but has chosen not to do so. Without Defendant's no-access-before-processing policy, there would be no delay in accessing e-filed civil complaints.

9.  Courthouse News brings this action to challenge the constitutionality of Defendant's policy and practice of restricting access to new complaints e-filed with Kentucky's Circuit Courts, and to seek declaratory and injunctive relief prohibiting Defendant from enforcing this policy and practice.

**JURISDICTION AND VENUE**

10. Courthouse News' claims arise under the First and Fourteenth Amendments to the U.S. Constitution and the Civil Rights Act, Title 42 U.S.C. § 1983, *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201 and 2202 (declaratory relief and further relief). Defendant is subject to personal jurisdiction in this District.

11.	Venue is proper in this District under 28 U.S.C. § 1391(b) because the headquarters of the Administrative Office of the Courts, which includes Defendant's office, is located in this District and because a substantial part of the events or omissions giving rise to Courthouse News' claims occurred in this District.

## PARTIES

12.	Courthouse News is a nationwide news service founded almost 30 years ago to report news about civil litigation. Courthouse News now employs approximately 223 people, most of whom are editors and reporters, covering state and federal trial and appellate courts in all 50 states in the United States.

13.	Defendant is the Director of Kentucky's Administrative Office of the Courts ("AOC") and is named as a defendant in that official capacity. The AOC acts as the administrative and fiscal agency of Kentucky's unified court system. *See* S. Ct. Rule 1.050(1).

14.	Courthouse News is informed and believes that Defendant is responsible for providing access to new complaints e-filed in Kentucky's Circuit Courts through the statewide e-filing and public access systems procured and provided by the AOC.

15.	Courthouse News is informed and believes that the AOC controls the statewide e-filing and public access systems, including the mechanisms of such statewide systems that enable access to e-filed complaints prior to the completion of administrative processing.

16.	Acting in his official capacity, Defendant and those acting under his direction and supervision are responsible for the delays in access to new complaints experienced by Courthouse News and other members of the press, which acts reflect the official policies and practices of the AOC.

17. Defendant's actions, as alleged in this Complaint, are under the color of Kentucky law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

18. Defendant is sued in his official capacity only. Courthouse News seeks relief against Defendant, as well as his agents, assistants, successors, employees, and all persons acting in concert or cooperation with him or at his direction or under his control.

## FACTUAL ALLEGATIONS

**A. Courthouse News Reports Daily News From Federal And State Courts, Including Kentucky's Circuit Courts.**

19. Courthouse News offers its readers a variety of publications. Its New Litigation Reports contain original, staff-written summaries of significant new civil lawsuits and are sent to subscribers via e-mail each evening. Among Courthouse News' other publications is the Daily Brief, which covers published, nationwide appellate rulings, including all U.S. Supreme Court and federal circuit decisions, decisions from state appellate courts, and significant rulings from the federal district courts.

20. Courthouse News also publishes a freely available website (www.courthousenews.com), which features news reports and commentary and is read by roughly 23,000 people every weekday. The website functions much like a print daily newspaper, featuring staff-written articles from across the nation that are posted throughout each day and rotated on and off the page on a 24-hour news cycle. On August 6, 2025, for example, the news page carried staff-written stories about a development in fighting Alzheimer's disease, a Texas county's legal challenge to a federal rule designating critical wildlife habitat, and a coding error that led to the deletion of portions of the Library of Congress' online copy of the federal Constitution.

21. Courthouse News' more than 2,200 subscribers nationwide include law firms, law schools, government offices, and news outlets. Many of Courthouse News' subscribers have dozens or even hundreds of readers within them.

22. Courthouse News functions as a pool reporter for news about civil litigation. Its many media subscribers include the Associated Press, *The Atlanta Journal Constitution*, *The Boston Globe*, the *Chicago Tribune, The Dallas Morning News*, *The Wall Street Journal*, and *The Washington Post*. Courthouse News' reporting is frequently credited as the source for news stories by a wide variety of outlets, including *The New York Times*, *The Wall Street Journal*, *New York Magazine*, *U.S. News and World Report*, ABC News, Fox News, Politico, NPR, the *Courier Journal*, and the *Lexington Herald Leader*.

23. Subscribing educational institutions include Baylor College, Columbia Journalism Investigations, the University of Maryland's College of Journalism, the University of North Carolina at Chapel Hill, and Wake Forest University. Public-interest organization subscribers include the ACLU of Kentucky.

24. In Kentucky, Courthouse News covers general civil litigation, focusing on actions brought against business institutions and public entities. This reporting is primarily included in Courthouse News' Louisville Report, which covers Circuit Courts in 117 of Kentucky's 120 counties. The remaining three (Boone, Campbell, and Kenton Counties) are covered in Courthouse News' Cincinnati Report.

25. Courthouse News' reporters do not cover family law matters, name changes, probate filings, most mortgage foreclosures, or actions brought only against individuals, unless the individual is notable. Courthouse News does not seek to review or report on the small

6

number of new civil complaints that are statutorily confidential or accompanied by a motion to seal.

26. To prepare the New Litigation Reports and identify new cases that warrant additional coverage, Courthouse News' reporters visit their assigned courts either in person or remotely to review the complaints filed that day and determine which are of interest to Courthouse News' readers. Given the nature of the coverage in the New Litigation Reports and Courthouse News' other publications, delay in the ability of a reporter to access new complaints holds up Courthouse News' reporting of new controversies for readers.

27. The AOC provides remote access to civil complaints e-filed in Kentucky's Circuit Courts through an online portal accessible to the public. Courthouse News' Louisville-based reporter also visits the courthouse to review complaints each day the courthouse is open. However, e-filed civil complaints are not available at the courthouse, through the online portal, or by any other means until after court staff have completed administrative processing.

28. During the month of July 2025, Courthouse News' tracking shows that the AOC's policy of withholding access until after the completion of administrative processing caused about *half* of all new civil complaints e-filed in Kentucky's Circuit Courts to be withheld from the public until at least the next day after filing, and often longer. Delays varied significantly from court to court, from day to day, and from week to week.

**B.   A First Amendment Right of Access Attaches to Civil Complaints When the Court Receives Them.**

29. A right of access grounded in the First Amendment applies to civil complaints. *See, e.g., Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1177-1180 (6th Cir. 1983); *Courthouse News Serv. v. Planet* ("*Planet III*"), 947 F.3d 581, 590 (9th Cir. 2020) ("The Supreme Court has yet to explicitly rule on whether the First Amendment right

7

of access to information reaches civil judicial proceedings and records, but the federal courts of appeals widely agree that it does.").

30. A new complaint serves as the opening bell in a legal dispute. In recognition of the media's traditional role as a surrogate observer for the general public as to what is happening in the courts, it has been a long-standing tradition for courts to provide reporters—especially those who visit the courts daily—with access to new civil complaints upon receipt for filing and before administrative processing. This ensures that interested members of the public learn about new cases contemporaneously with their filing, while those cases are most newsworthy and likely to be the subject of public attention and discussion.

31. Historically, reporters covering the courts could read and report on the civil complaints filed each day by reviewing them at the courthouse. This access generally occurred upon the court's receipt of a new complaint and before the clerk's office performed the additional administrative tasks that follow the receipt of a new complaint – a process that was traditionally called "docketing" but in recent years, especially as courts have moved to electronic case management systems and e-filing, has been referred to as "processing."

32. The filing of a complaint in the Commonwealth of Kentucky invokes the authority of the people of the Commonwealth. The public has a right to know when that authority has been invoked. Access to the complaint allows the public to supervise the judicial process by allowing the public to know the parties to the dispute, the alleged facts, the issues for trial, and the relief sought. Public access to the complaint also allows the public to understand the activity of the courts, enhances the accountability of the court system, and informs the public of matters of public concern. When a complaint is withheld from the public, it leaves the public unaware that a claim has been leveled and that state power has been invoked.

**C.     Delays in Access to New Civil Complaints Infringe Upon Courthouse News' First Amendment Rights.**

33.     Where the qualified First Amendment right of access attaches to a court record, it attaches when the filer submits the document, and the press and public generally have a contemporaneous right of access. *See, e.g., Courthouse News Serv. v. New Mexico Admin. Off. of Cts.*, 53 F.4th 1245, 1266 (10th Cir. 2022) ("[T]he right of access attaches when a complaint is submitted to the court."); *Planet III*, 947 F.3d at 588, 591 (qualified right of access attaches to a complaint when it is filed, *i.e.*, when it is received by the court); *Courthouse News Serv. v. Schaefer*, 440 F. Supp. 3d 532, 537 (E.D. Va. 2020) ("the First Amendment guarantees a qualified right to access newly-filed civil complaints contemporaneously with their filing"), *aff'd* 2 F.4th 3018 (4th Cir. 2021).

34.     The presumption of access may be restricted only if "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court of California* ("*Press-Enterprise II*"), 478 U.S. 1, 13-14; *Detroit Free Press v. Ashcroft*, 303 F.2d 681, 705 (6th Cir. 2002); *Planet III*, 947 F.3d at 596. Here, Defendant's policies are not essential to preserve higher values and are not narrowly tailored.

35.     Numerous federal courts have considered challenges to nearly identical policies in other state courts and concluded the defendant administrators either failed to satisfy their burdens of justifying their policies under constitutional scrutiny or were not likely to do so. *See Courthouse Serv. v. Jackson*, 2009 WL 2163609, at *4-5 (S.D. Tex. July 20, 2009) (granting preliminary injunction); *Courthouse News Serv. v. Tingling*, 2016 WL 8505086, at *1 (S.D.N.Y. Dec. 16, 2016) (granting preliminary injunction); *Schaefer*, 440 F.Supp.3d at 560-62 (awarding declaratory judgment after bench trial); *Courthouse News Serv. v. Planet*, 2021 WL 1605216, at *1 (C.D. Cal. Jan. 26, 2021) (entering declaratory judgment and permanent injunction);

9

*Courthouse News Serv. v. Gabel*, 2021 WL 5416650, at *19 (D. Vt. Nov. 19, 2021) (granting permanent injunction), *aff'd in part Courthouse News Serv. v. Corsone*s, 131 F.4th 59 (2025); *Courthouse News Serv. v. O'Shaughnessy*, 663 F. Supp. 3d 810, 820 (S.D. Ohio 2023) (granting preliminary injunction); *Courthouse News Serv. v. Omundson*, 2024 WL 4349112, *12 (D. Idaho Sep. 30, 2024) (granting declaratory judgment and permanent injunction), *appeal filed* No. 24-6697 (9th Cir. Nov. 4, 2024).

36. Delays in access to civil complaints e-filed in Kentucky's Circuit Courts are pervasive. Unlike most federal district courts and many state courts, Kentucky's Circuit Courts do not make new complaints available upon e-filing, as a result of the AOC's policy. Instead, complaints are withheld while they sit in an electronic repository, with the public gaining access only after court staff have completed administrative processing. Courthouse News' tracking reflects that Kentucky's Circuit Courts withheld about *half* of all new e-filed civil complaints from the public until at least the next day after filing, and often longer. Delays varied significantly from court to court, from day to day, and from week to week.

37. These delays are unnecessary and easily avoidable. Courts across the nation – including the U.S. District Court for the Eastern District of Kentucky – make newly e-filed complaints available upon the court's receipt, using means readily available to Defendant.

38. Processing new complaints is not the problem. All e-filing courts must conduct some kind of administrative processing of new complaints. The problem arises when a court withholds new complaints from the press and public until after processing is complete.

39. Courts that provide access as e-filed complaints are received, regardless of whether staff have completed clerical processing, include the overwhelming majority of federal district court and state courts in Alabama, Arizona, California (nearly all e-filing courts, covering

10

85% of the state's population), Connecticut, Florida, Georgia (courts in Atlanta metropolitan area), Hawaii, Iowa, Kansas, Maryland, Missouri, Nevada (in the state's biggest court in Las Vegas), New Mexico, New York, Ohio (numerous counties), Texas (numerous counties), and Utah.

40. Each of these courts engages in administrative processing of complaints, but they do not withhold access until such processing is completed. This allows new civil complaints to be read and reported when they are most newsworthy and most capable of commanding public attention.

D. **Kentucky's Transition to New Technology Presents an Opportunity, but Defendant Declined to Discuss Potential Solutions with Courthouse News.**

41. On September 25, 2024, the AOC announced that it had signed an agreement with technology provider Tyler Technologies to provide a new statewide trial court case management system and an enhanced statewide electronic filing system, with implementation expected sometime in 2025.

42. On October 24, 2024, Courthouse News' Northeast and Midwest Bureau Chief, Adam Angione, e-mailed the AOC's Chief Information Officer, Charles Byers, about the transition. Among other things, Mr. Angione asked whether public access to Circuit Court civil filings would continue to be provided through the AOC's CourtNet platform and whether the AOC was considering using a public access portal from Tyler.

43. Mr. Angione received no response to his October 24, 2025 e-mail.

44. On November 6, 2024, Mr. Angione tried again by sending an e-mail to the AOC's Information & Technology Services office asking the same questions about the transition to Tyler e-filing and case management software.

45. Mr. Angione received no response to his November 6, 2024 e-mail.

11

46. On November 13, 2024, Mr. Angione made a third attempt, this time sending an e-mail to the AOC's public information officer, Jamie Neal, asking the same questions about the transition to Tyler e-filing and case management software.

47. Mr. Angione received no response to his November 13, 2024 e-mail.

48. On December 4, 2024, Courthouse News' editor and publisher Bill Girdner sent a letter to Defendant. Among other things, Mr. Girdner explained to Defendant that many courts using Tyler's software provide on-receipt access to newly e-filed civil complaints, rather than withholding them until the completion of administrative processing. A copy of this letter is attached as **Exhibit 1**.

49. Mr. Girdner received no response to his December 4, 2024 letter.

50. On February 28, 2025, Mr. Girdner sent a second letter to Defendant. The letter explained that withholding access to e-filed civil complaints until after administrative processing results in pervasive delays in the ability of the press to review them. It also acknowledged that the Tyler-provided case management and e-filing systems were scheduled to go live in Jefferson and Fayette Counties in fall 2025 and pointed out that the transition to these systems made this a particularly good time to consider alternatives to withholding access to all e-filed civil complaints until after processing. A copy of this letter is attached as **Exhibit 2**.

51. Mr. Girdner received no response to his February 28, 2025 letter.

52. Courthouse News continues to experience significant delays in accessing new civil complaints e-filed in Kentucky's Circuit Courts.

**COUNT ONE - Violation of U.S. Const. Amend. I and 42 U.S.C. § 1983**

53. Courthouse News incorporates the allegations of Paragraphs 1-52 herein.

54. Defendant's actions under color of state law, including without limitation his policy and practice of withholding newly e-filed civil complaints from the press and public until after administrative processing, and the resulting delays in access to those complaints, deprive Courthouse News, and by extension its subscribers, of their right of access to public court records secured by the First Amendment to the U.S. Constitution.

55. The qualified First Amendment right to access new civil complaints e-filed in Kentucky's Circuit Courts arises when the court receives them, and access may be restricted only if the restriction is essential to preserve an overriding government interest and is narrowly tailored to serve that interest.  For Defendant's policy and practice to survive constitutional scrutiny under the test articulated in *Press-Enterprise II*, 478 U.S. at 13-14, Defendant "must demonstrate that (1) 'there is a "substantial probability" that [an overriding government interest] would be impaired by immediate access'; and (2) 'no reasonable alternatives exist to "adequately protect" that government interest.'" *New Mexico Admin. Off. of Cts.*, 53 F.4th at 1270. Defendant cannot satisfy either prong of this test with respect to the policies and practices alleged in this Complaint.

56. Courthouse News has no adequate remedy at law to prevent or redress Defendant's unconstitutional actions and will suffer irreparable harm as a result of Defendant's violations of Courthouse News' First Amendment rights.  Courthouse News is therefore entitled to a declaratory judgment and permanent injunctive relief to prevent further deprivation of its First Amendment rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Courthouse News prays for judgment against Defendant as follows:

1. A judgment pursuant to 28 U.S.C. § 2201 declaring that Defendant's policies and practices that knowingly affect delays in access to newly e-filed civil complaints in Kentucky's Circuit Courts, including, *inter alia*, his policy and practice of denying access to complaints until after administrative processing, are unconstitutional under the First and Fourteenth Amendments to the U.S. Constitution because these policies and practices constitute an effective denial of timely access to new civil complaints, which are public court records to which the First Amendment right of access applies.

2. A preliminary and permanent injunction against Defendant, including his agents, assistants, successors, employees, and all persons acting in concert or cooperation with him, or at his direction or under his control, prohibiting him from continuing his policies and practices that deny Courthouse News timely access to new e-filed civil complaints, including, *inter alia*, his policy and practice of denying access to complaints until after administrative processing.

3. An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

4. All other relief the Court deems just and proper.

Date: September 2, 2025

Respectfully submitted,

TACHAU MEEK PLC
Amy D. Cubbage
Marc G. Farris

/s/ Amy D. Cubbage
101 S. Fifth Street, Ste. 3600
Louisville, KY 40202
Phone: (502) 238-9905
acubbage@tachaulaw.com
mfarris@tachaulaw.com

-and-

BRYAN CAVE LEIGHTON PAISNER LLP
Jonathan G. Fetterly
*pro hac vice motion forthcoming*
Katherine Keating
*pro hac vice motion forthcoming*
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4070
Phone: (415) 675-3400
Jon.Fetterly@bclplaw.com
Katherine.Keating@bclplaw.com

*Counsel for Courthouse News Service*

15