**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**FRANKFORT DIVISION**
*Electronically Filed*

| | | |
|---|---|---|
| **COURTHOUSE NEWS SERVICE**<br><br>Plaintiff,<br><br>**v.**<br><br>**ZACHARY RAMSEY, in his official Capacity as Director of the Kentucky Administrative Office of the Courts**<br><br>Defendant. | ) | **CASE NO. 3:25-cv-44-GFVT** |

---

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FRCP 12(b)(1), (6), AND (7)**

---

Comes now Defendant, Zachary Ramsey, in his official capacity as Director of the Kentucky Administrative Office of the Courts, and files this Memorandum in Support of his Motion to Dismiss Plaintiff's Complaint.

## INTRODUCTION

Plaintiff Courthouse News Service ("CNS") brings a single count under 42 USC § 1983, claiming a violation of the First and Fourteenth Amendments to the United States Constitution by the Defendant, Zachary Ramsey, in his Official Capacity as the Director of the Kentucky Administrative Office of the Courts ("AOC") ("AOC Director"). CNS's Complaint argues that delays in processing by Kentucky courts have unconstitutionally delayed their access to newly filed civil complaints. CNS demands this Court order AOC's Director grant it access to newly filed civil complaints through Kentucky's electronic filing portal immediately upon receipt by the various courts. But CNS fails to identify any policy or procedure enforced, promulgated, or

authorized by the AOC Director that contributes to the alleged delay, or which would give him the authority to grant CNS access to complaints that have not been processed by the circuit court clerks, because there is none.

First, Director Ramsey does not possess the constitutional, statutory, or other authority to grant the relief that Plaintiff seeks. Therefore, Plaintiff has failed to state a claim for which relief can be granted against Director Ramsey under Fed. R. Civ. Pro. 12(b)(6). Second, because Plaintiff has not alleged an injury traceable to Director Ramsey and any judgment in Plaintiff's favor would not redress its injury, the Plaintiff lacks standing to bring a claim against Director Ramsey, and this Court lacks Article III jurisdiction. Third, the Plaintiff has failed to name the actual parties who have authority to set the policy and rules for the Court of Justice and specifically for court records—the Supreme Court of Kentucky ("SCOKY")—and who are the custodians of those records sought by CNS and are responsible for processing new civil complaints—the Clerks of the Circuit Courts. Thus, the Complaint must be dismissed for failure to add necessary and indispensable parties under Fed. R. Civ. P. 12(b)(7) and 19. Fourth, setting aside whether Director Ramsey is a proper party to this action, this Court should abstain from exercising jurisdiction under the principles of comity, equity, and federalism, as outlined in *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974). Finally, because Director Ramsey has neither enforced nor threatened to enforce any allegedly unconstitutional policy, he enjoys immunity under the Eleventh Amendment to the United States Constitution, and this Court lacks jurisdiction over him. For these reasons, the Plaintiff's Complaint must be dismissed.

## FACTUAL BACKGROUND

CNS alleges it is a nationwide news service offering its readers a variety of publications, including New Litigation Reports of significant new civil lawsuits. (DN 1 ¶¶ 12, 19, PageID#62,

63). CNS states that it only covers general civil litigation matters, focusing on actions brought against business institutions and public entities—typically not family law matters and never statutorily confidential and/or sealed actions. (DN 1 ¶¶ 24-25, PageID#64). CNS claims that AOC provides remote access to civil complaints electronically filed in Kentucky's Circuit Courts through an online portal access. (DN 1 ¶¶ 14-15, 27, PageID#62, 65).[1] However, it claims, that e-filed complaints are not available at the courthouse, through the online portal, or by any other means until after court staff have completed administrative processing. (DN 1 ¶ 27, PageID#65). CNS claims that its own tracking shows that "AOC's policy of withholding access" until after administrative processing caused half of all new civil complaints to be withheld from the public until at least the next day after filing. (DN 1 ¶ 28, PageID#65). CNS argues that the "right of access [to new civil complaints] attaches on receipt, when new filing is submitted to the court." (DN 1 ¶¶ 29-30, PageID#65-66). They argue that historically, reporters covering courts could read a civil complaint filed each day by reviewing them at the courthouse before the clerk performed the administrative task of docketing or processing the complaint, but do not indicate that they were previously provided or had such access. (DN 1 ¶ 31, PageID#66). Importantly, they claim this access was provided by the clerk—not AOC's Director. (DN 1 ¶ 31, PageID#66). Without citing any support, they state the delay in access is a result of AOC's policy. (DN 1 ¶ 36, PageID#68). CNS claims that after AOC announced it had contracted with a new technology provider, Tyler Technologies, CNS emailed AOC staff to inquire about access through a public access portal. (DN

[1] AOC's online portal for electronic case information is Kentucky CourtNet ("CourtNet"). *See* Kentucky Court of Justice CourtNet User Manual, January 2019, Available at: https://ehelp.kycourts.net/wp-content/uploads/2019/01/courtnet-2.0-manual_january_2019.pdf (last visited November 2, 2025).

1 ¶¶ 41-42, PageID#69). CNS claims it did not receive a response to its inquiries. (DN 1 ¶¶ 43-51, PageID#69-70).[2]

CNS seeks a judgment under the Declaratory Judgment Act, 28 USC § 2201, declaring Director Ramsey's "policies and practices" of denying access to complaints until after administrative processing are unconstitutional because they effectively deny timely access to newly filed civil complaints. (DN 1, PageID#72). They seek a preliminary and permanent injunction against Director Ramsey and "all persons acting in concert with him" to prohibit continuation of these alleged "policies and practices". *Id.* CNS seeks costs and attorneys' fees under 42 USC § 1988 and unspecified other relief. *Id*. For the reasons stated herein, the Complaint must be dismissed.

## ARGUMENT

CNS mistakenly aims its Complaint solely at AOC Director Ramsey in his official capacity, erroneously, and without support, claiming that he "is responsible for providing access to new complaints e-filed in Kentucky' Circuit Courts through the statewide e-filing and public access systems procured and provided by the AOC." (DN 1 ¶ 14, PageID#62). CNS asserts that Director Ramsey, along with his agents, "are responsible for delays in access to new complaints experienced by Courthouse News and other members of the press, which acts reflect the official policies and practices of the AOC." (*Id.* ¶ 16, PageID#16).

CNS claims that there is an AOC policy Director Ramsey has adopted and enforces that is to blame for these alleged delays in access, (DN 1 ¶ 28, PageID#65), but as a matter of law, Director Ramsey is not the custodian of pre-processed complaints, has no policy-making authority over

---

[2] Although not necessary to disposition of this motion, discovery would show that this statement is not accurate. In fact, AOC Director Ramsey responded to CNS's December 4, 2024, letter on December 20, 2024, by letter to Bill Girder, CNS's Editor, and informed him that AOC is unable to provide access to a complaint upon receipt.

access to pre-processed complaints, and cannot require the Circuit Court Clerks, who are the custodians of the records, to provide copies of pre-processed civil complaints. The authority to adopt or modify policy lies solely with the Supreme Court of Kentucky ("SCOKY") and the ability to provide access lies with the individual, local Circuit Court Clerks ("Clerks"), none of whom have been named in this action. Therefore, this Court must dismiss Plaintiff's lawsuit for failure to state a claim against Director Ramsey and because it lacks Article III jurisdiction since there is no substantial controversy. In addition, the Complaint must be dismissed for failure to join the SCOKY and/or the affected Clerk(s), who are necessary and indispensable parties under Rule 19. Setting aside the issue of whether Director Ramsey is a proper party to this action, this Court should abstain from exercising jurisdiction because federal courts should not be involved in overseeing judicial processes administered by state courts. Moreover, this Court lacks jurisdiction over Director Ramsey because, as sued in his official capacity, he is entitled to Eleventh Amendment immunity.

## I. Plaintiff's Complaint Fails To State A Claim Against Director Ramsey Because He Has No Legal Authority to Provide Access to Pre-Processed Complaints.

The Plaintiff's Complaint suffers from a fundamental misunderstanding of Kentucky's system of filing and processing court records for which it seeks access, and Director Ramsey's authority to provide them with access to the records. As a matter of law, he does not possess either the authority to provide them with these records, as he is not the records custodian, nor the authority to direct the custodian to provide him access. Without such authority or direction from the SCOKY, Director Ramsey cannot be responsible for denying access to such records and cannot legally provide the Plaintiff with the relief they seek. As such, the Complaint must be dismissed.

A. Rule 12(b)(6) Standard.

Pursuant to Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). But the complaint's factual allegations "must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory statements and facts "merely consistent with a defendant's liability" do not suffice to carry a complaint over 'the line between possibility and plausibility.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The Court need not accept legal conclusions or unwarranted factual inferences. *Sharp v. Ingham Cnty.*, 23 F. App'x 496, 498 (6th Cir. 2001). The Court will dismiss a complaint if the factual allegations are insufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

B. Only the Kentucky Supreme Court May Direct the Officer with Custody of the Court of Justice's Records to Release Them.

The Kentucky Constitution provides that the SCOKY is the head of the unified Court of Justice ("KCOJ"). Ky. Const. §§ 109, 116. *See Bluegrass Tr. for Historic Pres. v. Lexington Fayette Urb. Cnty. Gov't Plan. Comm'n*, 701 S.W.3d 196, 211 (Ky. 2024) ("[T]he Court of Justice is one and unified with the Supreme Court as its head."). The SCOKY has "the power to prescribe rules governing … the rules of practice and procedure of the Court of Justice." KY. CONST. § 116.

Pursuant to SCR 1.010, the policy-making and administrative authority of the KCOJ is vested in the SCOKY and the Chief Justice. The role of the SCOKY and the Chief Justice are defined by Section 110 of the Kentucky Constitution, which states in relevant part:

> The *Chief Justice of the Commonwealth shall be the executive head of the Court of Justice* and he shall appoint such administrative assistants as he deems necessary. He shall assign temporarily any justice or judge of the Commonwealth, active or retired, to sit in any court other than the Supreme Court when he deems such assignment necessary for the prompt disposition of causes. The Chief Justice shall submit the budget for the Court of Justice and *perform all other necessary administrative functions relating to the court*."

KY. CONST. § 110(5)(b) (emphasis added); *see Ex parte Farley*, 570 S.W.2d 617 (Ky. 1978) ("Though Const. § 110(5)(b) provides that the Chief Justice 'shall be the executive head of the Court of Justice,' there can be little doubt that § 110 vests the supervisory and policy-making authority of the judicial department in the Supreme Court. *Cf.* SCR 1.020(1)(a).")

The Kentucky General Assembly has recognized the SCOKY's constitutional authority and has declared that all records "made by or generated for or received by any agency of the Court of Justice [] shall be the property of the Court of Justice and are subject to the control of the Supreme Court." KRS § 26A.200. Those possessing court records "shall be subject to the direction of the Supreme Court with regard to such records and no such officer, agency, or other person shall fail to comply with any rule, regulation, standard, procedure, or order issued by the Chief Justice or his designee." KRS § 30A.220.

Other than the authority given to it by the SCOKY, the AOC Director and the AOC itself have no independent authority over court records. The AOC was established by the SCOKY after the citizens of the Commonwealth adopted the Judicial Amendments to the Kentucky Constitution, which took effect in 1976. *See* KY. CONST. §§ 109-125; SCR 1.050. The AOC may adopt policies and procedures, but only upon approval or delegation by the SCOKY. SCR 1.050. Director

Ramsey has no authority to contravene the rules adopted by the SCOKY, or exceed the authority given to him or the agency. *See Nance v. Kentucky Administrative Office of the Courts*, 336 S.W.3d 70, 73 (Ky. 2011) ("[t]here is no grant of authority to the AOC Director beyond that which is delegated to him by the Chief Justice, or by the Supreme Court in its rule-making capacity.").

Therefore, under both Kentucky's Constitution and statutes, the SCOKY is the only authority vested with control over all KCOJ records, and the ability to direct those with custody of the records to act. Without a grant of that authority, Director Ramsey cannot direct any officer or person with custody of court records to take any action.

C. <u>Kentucky's Circuit Court Clerks Are the Custodian of Court Records, Including Complaints Submitted for Filing But Not Yet Processed.</u>

The SCOKY has exercised its authority over its records and has declared that the Clerks of each jurisdiction are the custodians of the records of newly filed complaints in their jurisdiction. Kentucky's Circuit Court Clerks are elected officials that serve as the clerks of both Kentucky's district and circuit courts. KY. CONST. § 114(3). Once elected, they serve a term of six years. KY. CONST. § 97. There are 120 Clerks in the Commonwealth—one for each county.

Complaints submitted for filing, whether electronically or conventionally, are records submitted to and in the custody of the circuit court clerks. *See* Ky. Civ. R. Pro. 3.01, 79.01, and 79.05; and KRS 30A.080. Circuit court clerks are responsible for maintaining "all records, files, dockets, and indexes as are prescribed by statute or rule." KRS § 30A.080(1). "A civil action is commenced by the filing of a complaint with the court …." Ky. Civ. R. Pro. 3.01. The SCOKY has directed the clerk of each trial court—not the AOC Director—to "maintain separately all papers filed, entered, issued or returned in each action [] which shall constitute the original action." Ky. Civ. R. Pro. 79.05(1). Further, the clerk is required to keep a docket in all original actions of their court which lists "[a]ll papers filed with the clerk []." Ky. Civ. R. Pro. 79.01(1).

Consistent with its historic practices and Kentucky statutes, circuit court clerks are also the custodian of records submitted to their court through the eFiling system. The SCOKY adopted the Administrative Rules of Practice and Procedure for the Kentucky Court of Justice Electronic Filing ("eFiling Rules"), which were intended to supplement the Kentucky Rules of Procedure. (eFiling Rules, § 4(1) (amended by Order 2025-02, eff. Jan. 3, 2025), attached as Exhibit A). Pursuant to the eFiling Rules, the circuit clerk receives the eFiling, creates a case entry, and either records the document filed or returns the filing due to errors in the submission, such as lack of payment. (Exhibit A, SCO 2025-02, eFiling Rules, § 8(3)). Lastly, once the document has been processed, the circuit clerk prints the filing and maintains it as the official court record. (eFiling Rules, § 15(2) (amended by Order 2025-41, effective Oct. 30, 2025), attached as Exhibit B).

Moreover, the SCOKY has very recently directed clerks, not Director Ramsey or the AOC, to provide pre-processed complaints upon request in limited circumstances. (Exhibit B, SCO 2025-41, eFiling Rules, § 15(1)). Section 15 now requires as follows:

> (1) The clerk shall process, according to Sections 8 and 9 of these rules, all newly eFiled and non-confidential civil complaints (or other initiating documents) on the same business day of submission or if submitted after 4pm or outside of business hours, on the next business day, unless impractical or the clerk experiences technical difficulties or system unavailability. If not processed within this timeframe, the clerk, upon request, shall provide a copy of the complaint (or other initiating document) prior to review or processing as soon as is practicable.

(Exhibit B, SCO 2025-41, eFiling Rules, § 15(1)). Further, supporting Ramsey's position that the clerk is the custodian of this record and that he still has no authority to provide access to pre-processed Complaints to the Plaintiff.

D. The Kentucky Supreme Court Has Designated the AOC the Custodian of CourtNet, Which Does Not Include Complaints Not Yet Docketed By the Clerk.

The Plaintiff appears to conflate Kentucky's eFiling application with CourtNet. As noted above, the eFiling application, mimics the circuit court clerk's filing counter and all records submitted through the eFiling application are records of the receiving court clerk. *See* Argument I, Section C, *supra.* KYCourts is the clerks' Case Management System ("CMS") that dockets and electronically records all court filings. Kentucky CourtNet ("CourtNet") is the online portal that allows a user to view existing case information and images electronically.

Pursuant to SCR 1.010, the SCOKY has adopted rules establishing access to electronic case information. *See* Administrative Procedures of the Court of Justice ("AP"), Part XI, §1(3); *Kentucky Court of Justice Policy and Rules on Access to Electronic Court Records,* SCAO July 17, 2001 ("KCOJ Electronic Access Policy"), (attached as Exhibit C); Exhibit A, eFiling Rules, § 16. Electronic case information is to be accessed only with the written authorization of the SCOKY pursuant to the terms of use and access approved by the Chief Justice. *Id.* The KCOJ Electronic Access Policy provides that access decisions lie with the official custodian of the particular records and the SCOKY has expressly designated each clerk as the custodian for information contained in their CMS, KYCourts. (Exhibit C, KCOJ Electronic Access Policy, Part I, Sec. B.)

CourtNet is not the same application as eFiling or KYCourts. *Id.* CourtNet is the web-based application provided by the KCOJ that provides public access to electronic case information. *See generally*, CourtNet 2.0 User Manual.[3] The KCOJ Electronic Access Policy defines CourtNet to

[3] The KCOJ CourtNet User Manual provides a description of CourtNet and the access provided to its users. *See* Kentucky Court of Justice CourtNet User Manual, January 2019, Available at: https://ehelp.kycourts.net/courtnet-user-manual/. (last visited October 31, 2025). While courts are generally limited to considering the pleadings, district courts can consider certain items without converting the motion to one for summary judgment, including "exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

"include all cases entered into local case management systems." (Exhibit C, KCOJ Electronic Access Policy, Part I, Sec. D(D)). In other words, CourtNet does not include filings submitted for filing that have not yet been docketed by the clerk. Court filings only appear in CourtNet *after* they have been processed by the local clerk in the CMS. The AOC is not the custodian of records in the eFiling system or CMS and can only provide public access to electronic case information in CourtNet. (*See* Exhibit C, KCOJ Electronic Access Policy, Part I, Sec. B). The SCOKY has further stated that electronic access to case information related to eFilings can be obtained either through CourtNet or if you are one of the eFiling parties to the case, through the eFiling application. (Exhibit A, SCO 2025-02, eFiling Rules, § 16). The Plaintiff admits it has been provided access to CourtNet, (DN 1, ¶ 27, PageID#65), the only application the SCOKY has delegated to the AOC Director for purposes of approving or denying access.

E. The Kentucky Supreme Court Has Not Authorized Director Ramsey to Grant Access to Newly Filed Pre-Processed Civil Complaints.

As stated above, other than the authority given to it by the SCOKY, the AOC Director and the AOC as an agency have no independent authority over court records. Shortly after adoption of the Judicial Amendments to the Kentucky Constitution, the SCOKY explained AOC's relationship to the SCOKY and the Chief Justice. In *Ex parte Farley*, a public defender, Farley, sought records of data compiled by AOC. 570 S.W.2d 617, 621 (1978). In response, AOC advised that the records would not be available until the Chief Justice ordered otherwise. *Id.* Farley initiated an action to obtain the records. The SCOKY held that "the custody and control of the records generated by the courts in the course of their work are inseparable from the judicial function itself[.]" *Id.* The Court held "Const. § 110(5) directs the Chief Justice to appoint such administrative assistants as he deems necessary [and the AOC and its] director [] serve as the staff of the Chief Justice in executing the policies and programs of the Court of Justice." *Id.*, at 620. In

other words, the AOC and its staff exist to carry out the directives of the SCOKY and the Chief Justice in administering the KCOJ. Director Ramsey cannot go beyond that authority without approval of the SCOKY.

The SCOKY further explained AOC's lack of independent authority in *Nance*, 336 S.W.3d at 72. In *Nance*, a Circuit Court judge brought a writ of mandamus, claiming the AOC lacked the authority to terminate a Family Court Administrator working in his judicial circuit, and demanding her reinstatement. *Id.* The Court held that the termination was valid, but only because the Chief Justice had delegated that authority to the AOC Director. *Id.*, at 73-74. Importantly, the Court held "[t]here is no grant of authority to the AOC Director beyond that which is delegated to him by the Chief Justice, or by the SCOKY in its rule-making capacity." *Id.* at 73. Notably, there has been no such delegation of authority to Director Ramsey relating to the custody of pre-processed court records or provision of copies thereof. That authority lies with the SCOKY and the individual clerks. (Exhibit A, SCO 2025-02, eFiling Rules, § 15(1)). The Plaintiff cannot shift the Clerk's responsibilities to Director Ramsey. *See In re Overstreet,* 851 S.W.2d 458 (Ky. 1993) (holding the clerk is responsible for the fiscal management of his office, not AOC).

Once again, the Kentucky General Assembly has recognized the Chief Justice's constitutional authority to oversee the KCOJ, and specifically her authority delegate authority to the AOC Director. *See* KRS § 27A.050 ("The Administrative Office of the Courts is created to serve as the staff for the Chief Justice in executing the policies and programs of the Court of Justice. The director of the Administrative Office of the Courts, employees thereof, and administrative assistants of the Chief Justice shall serve at the pleasure of the Chief Justice."). While AOC is the administrative and fiscal agency of the KCOJ, all policies and procedures it adopts reflect a policy adopted by the SCOKY or an explicit delegation of authority by the SCOKY. SCR 1.050(1).

Contrary to Plaintiff's unsupported allegation, Director Ramsey can only act within the authority delegated to him by the SCOKY or the Chief Justice. *See Nance*, 336 S.W.3d at 72. Neither has provided him with the legal custody of complaints prior to the Clerk's processing, or the authority to provide those records. The SCOKY has given Ramsey, as the Director of AOC, the ability to allow CNS to access to records through CourtNet, which he has given. Ramsey does not have authority to provide pre-processed complaints through CourtNet. Therefore, CNS has failed to plead sufficient facts to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570. Plaintiff fails to provide any foundation for its conclusion that AOC or its director is "responsible for providing access to new complaints e-filed in Kentucky' Circuit Courts through the statewide e-filing and public access systems procured and provided by the AOC." (DN 1 ¶ 14, PageID#62). Accordingly, the Complaint must be dismissed for failure to state a claim.

## II. The Court Lacks Article III Jurisdiction Because There is No Substantial Controversy Between the Parties.

Plaintiff seeks a declaration of rights against Director Ramsey under the Declaratory Judgment Act but has not shown the necessary standing under Article III of the United States Constitution to bring such a claim because Ramsey has not caused or threatened an injury to CNS and a decision in CNS's favor cannot provide it the redress it seeks.

The Declaratory Judgment Act provides federal courts with the authority to declare the rights and other legal relations of any interested party in a case of actual controversy. 28 U.S.C. § 2201(a). The "case or controversy" jurisdictional requirement of Article III of the United States Constitution applies to declaratory judgment actions. *Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 844 (6th Cir.1994). The issue is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Michigan State*

*Chamber of Commerce v. Austin*, 788 F.2d 1178, 1181 (6th Cir.1986); *Detroit, Toledo & Ironton R. Co. v. Consolidated Rail Corp.*, 767 F.2d 274, 279 (6th Cir.1985). The requirements of Article III are not satisfied merely because a party requests a court of the United States to declare its legal rights. *Michigan v. Meese*, 853 F.2d 395, 397 (6th Cir.1988). If there is no case or controversy, this Court lacks subject matter jurisdiction over these proceedings. *Id*.

One component of Article III's "case or controversy" requirement is that the plaintiff have standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 407 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Article III standing requires: 1) the plaintiff to have suffered an injury in fact which is a) concrete and particularized and b) actual or imminent, not conjectural or hypothetical; 2) a causal connection to exist between the injury and the conduct complained of; and 3) it be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992).

Here, Plaintiff's Complaint fails to meet the second and third prongs of the *Lujan* test. As discussed above in Argument I., *supra*, Ramsey has not sought to enforce or promulgated any policy which has resulted in the Plaintiff's denial of access to pre-processed complaints. He simply has no authority to either grant or deny Plaintiff access to the requested records. *See Nance,* 336 S.W.3d at 72. As such, "the injury [is not] fairly traceable to the challenged action." *Lujan*, 504 U.S. at 560. Without identifying a specific policy that Ramsey is enforcing or has promulgated, the injury is not traceable to him, and the Plaintiff has not alleged a causal connection between the alleged First Amendment violation and Ramsey's conduct.

Next, as discussed herein in Argument III., *supra*, Plaintiff's alleged injury cannot be redressed by a decision in its favor. Because Ramsey is not the custodian of the sought after records, and because he has no authority to grant Plaintiff access to those records, he cannot legally

provide the records. Ramsey will still be required to act under the limited authority of the SCOKY. As such, a favorable decision will not provide the Plaintiff with the redress it seeks. "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1988). Accordingly, the Complaint must be dismissed for lack of Article III jurisdiction.

## III. The Complaint should be dismissed under Rule 12(b)(7) because CNS failed to join the Supreme Court of Kentucky and the Necessary Circuit Court Clerk.

A. Standard Under Rule 12(b)(7).

Fed. R. Civ. Pro. 12(b)(7) allows a party to move to dismiss for failure to join a party under Rule 19. Fed. R. Civ. Pro. 19 outlines a three-step analysis to determine when a party must be joined. *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001); Fed. R. Civ. P. 19. First, the court must ascertain if a party is a necessary party under the criteria in Rule 19(a). *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 763–64 (6th Cir. 1999); Fed. R. Civ. P. 19(a). For this designation, the absent party need only meet one of the following requirements outlined in Rule 19(a)(1):

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest;
> or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

"The burden is on the moving party to establish that a party is necessary for purposes of Rule 19(a)." *Reilly v. Meffe*, 6 F. Supp. 3d 760, 774 (S.D. Ohio 2014) (citing *Marshall v. Navistar Intern. Transp. Corp.*, 168 F.R.D. 606, 611 (E.D. Mich. 1996); 5 Charles A. Wright and

Arthur R. Miller, Federal Practice and Procedure § 1359 (3d Ed. 2013)). This burden can be met by producing affidavits or other extrinsic evidence, which the court may consider without converting the motion into one for summary judgment. *See id.* (quoting *Lewis v. Ceralvo Holdings, LLC*, No. 4:11-cv-55-JHM, 2012 WL 32607, at *8 (W.D. Ky. Jan. 6, 2012)).

"Complete relief is determined as between persons already parties, 'and not between a party and the absent person whose joinder is sought.'" *Haney v. Charter Foods N., LLC*, 747 F. Supp. 3d 1093, 1114 (E.D. Tenn. 2024) (citing *Laethem Equip. Co. v. Deere & Co.*, 485 F. App'x 39, 44 (6th Cir. 2012) (quoting *Sch. Dist. of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 265 (6th Cir. 2009))). A party is necessary if he or she claims an interest to the subject of the action and disposing of that action in its absence may impair or impede its ability to protect that interest. *Whaley v. Definitive Roofing & Specialty Coatings, LLC*, No. CV 5:24-339-DCR, 2025 WL 1805248, at *6 (E.D. Ky. June 30, 2025).

B. <u>The Kentucky Supreme Court and the Circuit Court Clerks are Necessary and Indispensable Parties.</u>

Here, the SCOKY and the Clerks easily qualify as necessary parties under Rule 19(a) because this Court "cannot accord complete relief among the existing parties." Fed. R. Civ. P. 19(a)(1)(A). Further, the failure to join SCOKY and its Clerks will "impair or impede" their ability to protect their substantial interest in the subject matter of this lawsuit. *See* Fed. R. Civ. P. 19(a)(1)(B)(i).

The AOC and its employees, including the Director, are merely conduits to execute and implement SCOKY policies, or to otherwise act at SCOKY's direction. *See* SCR 1.050; KRS § 27A.050. As discussed above, the SCOKY is charged with establishing the "rules of practice and procedure for the Court of Justice." KY. CONST. § 116. The Chief Justice is authorized to perform all necessary administrative functions and hire staff to assist in executing that authority. KY.

CONST. § 110(5)(b); *see* SCR 1.010 ("The policy-making and administrative authority of the Court of Justice is vested in the Supreme Court and the Chief Justice."). "There is no grant of authority to the AOC Director beyond that which is delegated to him by the Chief Justice, or by the Supreme Court in its rule-making capacity." *Nance*, 336 S.W.3d at 73. To wit, the SCOKY is a necessary party under Rule 19 (a)(1).

One or more Circuit Court Clerks are also a necessary and indispensable party. Plaintiff's Complaint casts a wide net but does not articulate which Circuit Court Clerk is responsible for the processing delays they claim exist for newly filed civil complaints.[4] But, the clerks of the jurisdictions CNS claims causes the delay in access will necessarily be impacted by any requirement to release unprocessed complaints. As discussed, *supra*, the Clerks are the custodian of the Court records, and pursuant to eFiling Rules, § 15(1), they have been directed to process the complaints within one business day or otherwise provide the pre-processed complaints upon request. (Exhibit B, SCO 2025-41, eFiling Rules). Under KRS § 26A.200(1), all records "received by any agency of the Court of Justice, […] shall be the property of the Court of Justice and are subject to the control of the Supreme Court." KRS § 26A.200(1). All public officers, agencies, or persons with court records are subject to the direction of the SCOKY with regard to such court records. KRS § 26A.220. Clerks, state officers within the Court of Justice and subject to the administrative control of the Chief Justice, are statutorily charged with maintaining court records.

[4] Plaintiff's claim largely rests on the allegation that during the month of July 2025, "withholding access until after administrative processing caused about half of all new civil complaints e-filed in Kentucky's Circuit Courts to be withheld from the public until at least the next the next day after filing, and often longer." (DN1, PageID#65). They do not, however, point to a single individual Clerk who is allegedly violating their first amendment right of access by delaying processing.

KRS § 30A.080. The AOC, on the other hand, merely provides Clerks the supplies required to maintain those records. *See id.* [5]

Moreover, joinder is feasible, and there is no reason why either the SCOKY or the allegedly deficient clerks cannot be joined. But even if it were not feasible to join one or more of the necessary parties, equity would still require that the action be dismissed. Four factors control whether an action should be dismissed when joinder of a party is not feasible under Rule 19(b): (1) "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties"; (2) "the extent to which any prejudice could be lessened or avoided"; (3) "whether a judgment rendered in the person's absence would be adequate"; and (4) "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. Rule 19(b).

All four factors are met here. First, the SCOKY and the affected Clerks would be prejudiced by a judgement rendered in their absence. SCOKY, not Ramsey, has the ultimate authority to make and adopt policies and procedures governing the KCOJ. Ramsey is simply not empowered under the Kentucky Constitution or by statute to develop or adopt policies and procedures except as expressly delegated by statute, rule, AP, or order. Any direction by this Court would necessarily interfere with the SCOKY's exercise of its policy-making authority. As to the Clerks, they are the custodians of the records that CNS seeks and would necessarily be impacted by any judgment in

---

[5] CNS admits that complaint processing and the alleged associated delays are a responsibility of individual Circuit Clerks, (DN 1, PageID#65), and has sued specific Clerks in nearly identical actions accordingly. *See e.g. Courthouse News Serv. v. Brown*, 908 F.3d 1063 (7th Cir. 2018)(Naming the Clerk of the Circuit Court of Cook County in suit alleging delays in access to newly filed complaints); *Courthouse News Serv. v. Schaefer*, 2 F.4th 318 (4th Cir. 2021) (Naming the Clerks of the Circuit Court of Norfolk Virginia and the Circuit Court of Prince William County Virginia in suit alleging delays in access to newly filed civil complaints); *Courthouse News Serv. v. Planet*, 750 F.3d 776 (9th Cir. 2014)(naming the Clerk of Ventura County Superior Court in suit alleging delays in access to newly filed complaints); Courthouse News Serv. v. Parikh, 630 F. Supp. 3d 894 (S.D. Ohio 2022)(Naming Clerk of the Hamilton County Court of Common Pleas in suit alleging delays in access to newly filed civil complaints.); Courthouse News Serv. v. O'Shaughnessy, No. 2:22-CV-2471, 2022 WL 17476835 (S.D. Ohio Dec. 6, 2022) (Naming Clerk of the Franklin County Court of Common Pleas in suit alleging delays in access to newly filed civil complaints).

this case. If the Plaintiff were to be successful, the Clerks would be subjected to a new rule, created by the federal judiciary. The specific Clerk that Plaintiff claims is responsible for the delay must be given an opportunity to speak to any reason for the alleged delay.

Director Ramsey would also be prejudiced if a judgment were rendered in the absence of the SCOKY or the Clerks. Like the Clerks, Director Ramsey would be subjected to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. On one hand, the SCOKY has not given him the authority to provide access to the demanded records in the custody of the Clerks. On the other hand, a judgment in Plaintiff's favor would require Director Ramsey to provide that access. The ability of the AOC and its Director to comply with any such a judgment would be dependent on it gaining authority from the SCOKY and the cooperation of the Clerks.

Second, prejudice cannot be avoided without joining both the SCOKY and the affected Clerks because the relief sought strikes to the core of the SCOKY's constitutional authority and the records officially possessed by the Clerks. Thus, nonjoinder cannot be cured by shaping and tailoring the requested relief to avoid entanglement with the SCOKY and its Clerks.

Third, any judgment in the SCOKY's absence would be inadequate because, again, the SCOKY has the authority to promulgate rules and policies for the Court. Neither Director Ramsey nor AOC has any independent authority to grant access without prior approval by the SCOKY. Finally, the Plaintiff clearly has an adequate remedy. CNS can refile its action and name the appropriate parties in either state or federal court. The Kentucky courts are equipped to handle CNS's lawsuit in the event this action is dismissed under Rule 12(b)(7).

For these reasons, the Defendant requests that this lawsuit be dismissed for failure to join necessary and indispensable parties.

## IV. The Principles of Equity, Comity, and Federalism compel Abstention.

CNS asks this Court to insert itself into the role of the SCOKY and direct state court operations. This Court should decline the invitation. The relief Plaintiff seeks directly affects the administration of the state courts and would run contrary to the principles of equity, comity, and federalism recognized in Federal Court abstention doctrines. *See Courthouse News Serv. v. Brown*, 908 F.3d 1063 (7th Cir. 2018). The Plaintiff's injunction, if granted, "would disrupt the normal course of proceedings in the state courts via resort to the federal suit...." *O'Shea*, 414 U.S. at 501. And to enforce the requested injunction "would require ... the continuous supervision by the federal court over the conduct of the" state judicial officers. *Id.* Such relief runs afoul of equitable restraint, comity, and federalism.

The United States Supreme Court has recognized four principal categories of abstention: *Pullman*, *Burford*, *Younger*, and *Colorado River*, named after *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *Younger v. Harris*, 401 U.S. 37 (1971); and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Two additional categories, *O'Shea* and *Rizzo*, are often considered extensions of *Younger*, but as discussed below, *O'Shea* has been considered a distinct doctrine in and of itself. See *O'Shea, supra*; *see also*, *Rizzo v. Goode*, 423 U.S. 362 (1976); *Disability Rts. N.Y. v. New York*, 916 F.3d 129, 135 n.3 (2d Cir. 2019); *Brown*, 908 F.3d at 1071. The abstention decisions in *O'Shea* and *Rizzo* are most closely applicable to the present case, however, neither is a perfect fit. While neither *O'Shea* nor *Rizzo* perfectly fits the present case, the principles they embody—equity, comity, and federalism—compel abstention here. *Brown*, 908 F.3d at 1071.

*Younger* abstention is typically limited to "three exceptional categories" of cases: (1) "parallel, pending state criminal proceeding[s]"; (2) "state civil proceedings that are akin to

criminal prosecutions"; and (3) state civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013). In *O'Shea*, the court went further. There, the plaintiffs alleged that a municipal court system was intentionally discriminating against African Americans in bail and sentencing practices. Initially, the district court dismissed the case, but the Court of Appeals reversed, stating that if the allegations were proven, the district court should issue injunctive relief to prevent future constitutional violations by state court judges. However, the U.S. Supreme Court reversed the appellate decision for lack of standing but went on to hold that under the principles of *Younger* abstention, the Court would have reversed even if the plaintiffs had standing. The Court explained that federal courts should abstain from exercising their equitable authority to oversee the operations of state courts in accordance with the principles of equitable restraint and concerns of comity and federalism. *O'Shea*, 414 U.S. at 673.

The Court further explained the basis for abstention being the contemplated injunction "would disrupt the normal course of proceedings in the state courts via resort to the federal suit…," and enforcement "would require ... the continuous supervision by the federal court over the conduct of the" state judicial officers. *Id.* at 501. Although the court of appeals had "disclaimed any intention of requiring the District Court to sit in constant day-to-day supervision of these judicial officers," the Court reasoned that "the 'periodic reporting' system it thought might be warranted would constitute a form of monitoring of the operation of state court functions that is antipathetic to established principles of comity." *Id.* The Court went on to explain that actions to enforce the contemplated injunction would constitute impermissible federal oversight of state courts. *Id.* at 502. Such an intrusion, the U.S. Supreme Court observed, "is in sharp conflict with

the principles of equitable restraint which this Court has recognized...." *Id.* In essence, the Court emphasized the importance of judicial restraint and respect for state court autonomy.

In *Rizzo v. Goode*, the United States Supreme Court further extended the principles of *Younger* to limit federal court review of local executive actions. *Rizzo,* 423 U.S. 362 (1976). In reversing an injunction requiring city officials to come up with a comprehensive program for dealing with civilian complaints pursuant to the federal court's detailed guidelines, the Supreme Court explained that the "District Court's injunctive order here, significantly revising the internal procedures of the Philadelphia police department, was indisputably a sharp limitation on the department's latitude in the dispatch of its own internal affairs." *Id.* at 379 (quotation marks omitted). The Court noted that "federal courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" *Id*. at 378 (citing *Stefanelli v. Minard*, 342 U.S. 117, 120 (1951), quoted in *O'Shea,* 414 U.S. at 500).

Abstention under *O'Shea* has been considered distinct from the limited abstention criteria under *Younger*. *See Sprint*, 571 U.S. at 73 (describing three categories of cases to which *Younger* applies; *Disability Rts. N.Y.*, 916 F.3d at 135 n.3 ("While the Supreme Court in Sprint made clear that *Younger*'s scope should be limited to the three specified categories, the Court did not suggest that abstention under *O'Shea* should be circumscribed." (citation omitted)). As the Second Circuit has explained, "[a]lthough *Younger* mandates abstention only when the plaintiff seeks to enjoin ongoing state proceedings and only in the three instances identified in *Sprint*, the Supreme Court has also held that even where no state proceedings are pending, federal courts must abstain where failure to do so would result in 'an ongoing federal audit of state criminal proceedings.'" *Disability Rts. N.Y.*, 916 F.3d at 134 (quoting *O'Shea*, 414 U.S. at 500). And as with *Younger*, *O'Shea*

abstention has been applied not only in the criminal context, but "in certain civil contexts involving the operations of state courts." *Disability Rts. N.Y.*, 916 F.3d at 134-35 (collecting cases).

CNS's requested injunctive relief would constitute ongoing interference with state court operations that compel *O'Shea* abstention. CNS seeks an injunction requiring immediate access to civil complaints upon submission. The SCOKY dictates how the eFiling of new civil complaints are processed by the clerks, and made available to the public. Its new rule requiring processing of newly filed civil complaints on the same day as filed has just taken effect. (Exhibit B, SCO 2025-41, eFiling Rules, § 15(1)). The requested relief would require the federal court to issue an order that exceeds the SCOKY's new directive to its clerks and make AOC responsible for the clerk's obligations. This Court would be required to continue to police the operations of court clerks across Kentucky, ready to track compliance with the bright-line requirement for an immediate copy or access to the document and to enforce deviations from this standard. Such continued supervision of state court operations, coupled with the prospect of claims based on violations of the federal court's injunction order, place requested relief squarely within *O'Shea's* ambit. *See O'Shea*, 414 U.S. at 501-02 (abstention warranted where prospect of continued monitoring and enforcement actions to ensure compliance); *see also Brown*, 908 F.3d at 1074 (discussing the intrusive potential of enforcement actions); *Disability Rts. N.Y.*, 916 F.3d at 136 ("Ongoing, case-by-case oversight of state courts ... is exactly the sort of interference O'Shea seeks to avoid.").

In *Brown*, *supra*, the Seventh Circuit abstained from enjoining the Clerk of the Circuit Court of Cook County to release newly filed complaints at the moment of receipt. In *Brown*, CNS sought an injunction against the Cook County Clerk, which would mandate that the Clerk provide CNS with instant access to new civil court filings as soon as they were received by the Clerk. 908 F.3d at 1066-1069. The District Court granted the preliminary injunction requested by CNS, but

the Seventh Circuit overturned that decision, and ordered that the case be dismissed based on abstention. *Id.* at 1075. The Seventh Circuit looked at several prominent abstention cases including *O'Shea* and *Rizzo*, and ultimately found that the basic principles of comity and federalism that connect these cases warranted abstention. *Id.* at 1063. The Court found that the level of intrusion CNS was seeking—to have the federal court direct the state court's operations—was too high, at least before the state courts had a chance to consider the issue. *Id.* at 1074. Specifically, the Court found that:

> This principle of comity takes on special force when federal courts are asked to decide how state courts should conduct their business. The [state] courts are best positioned to interpret their own orders, which are at the center of this case, and to craft an informed and proper balance between the state courts' legitimate institutional needs and the public's and the media's substantial First Amendment interest in timely access to court filings. It is particularly appropriate for the federal courts to step back in the first instance as the state courts continue to transition to electronic filing and, like many courts around the country, are working through the associated implementation challenges and resource limitations.

*Id*.

The Sixth Circuit has also recognized abstention in cases that do not neatly fit into abstention doctrine. In *Gottfried v. Medical Planning Servs*., the Sixth Circuit warned against an overly rigid application of abstention doctrine in circumstances where the technical requirements of an abstention do not fit squarely in a case where the facts nevertheless implicate the policies underlying abstention. 142 F.3d 326, 330 (6th Cir. 1998). In *Gottfried*, the plaintiff brought an action under § 1983 asking the District Court to strike down a 12 year old state court's injunction that restricted her ability to protest an abortion clinic as unconstitutional under the First Amendment. *Id.* At 328. The District Court dismissed her case for reasons of comity and federalism. *Id.* In affirming the decision, the Sixth Circuit noted that even though the case did not

precisely fit any of the abstention doctrines, the underlying policies restricting federal jurisdiction were present and affirmed abstention. *Id.* at 330. The Court observed that:

> [Plaintiff's] lawsuit does not precisely fit any of the jurisdictional doctrines normally applicable in cases like hers, even though the policies that typically restrict federal jurisdiction are present. In this case there is tension between the principles that justify abstention and the technical requirements for each of the doctrines discussed above. Like the District Court, however, we are concerned about the policies underlying abstention, not its precise limitations. Therefore, we should keep in mind the Supreme Court's recent advice that "the various types of abstention are not rigid pigeonholes" but instead "reflect a complex of considerations designed to soften the tensions inherent" in a dual state-federal system of justice. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 n.9, 95 L. Ed. 2d 1, 107 S. Ct. 1519 (1987).

*Id.*

Notably, the *Gottfried* Court acknowledged essentially the same principles recognized by the Seventh Circuit in *Brown*: although each abstention doctrine has different technical requirements and different purposes, the common thread that runs throughout all of them is a respect for comity and the respective roles of the state and federal courts when federal courts are asked to become involved and rule on state issues—and this fundamental principle applies even when a case may not fit squarely into any specific abstention doctrine. *Id.*; *see Brown*, 908 F.3d at 1074.

As the United States' Supreme Court has stated, Federal courts may decline to exercise jurisdiction where denying a federal forum would "clearly serve an important countervailing interest," including "regard for federal-state relations." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). "This equitable decision balances the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the State's interests in maintaining 'uniformity in the treatment of an "essentially local problem." *Id*. at 728, quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 362 (1989). State

courts have a significant interest in running their own clerks' offices and setting their own filing procedures. *Brown*, 908 F.3d at 1071.

Based on the foregoing, this Court should abstain from deliberating on the constitutionality of SCOKY’s rules on public access to civil filings before the Kentucky courts have had the chance to decide the issue for themselves. Unless and until Kentucky courts have proven unwilling to address an alleged First Amendment violation the federal courts should not exercise jurisdiction over the matter.

## V. Ramsey, as Named in his Official Capacity, is Entitled to Eleventh Amendment Sovereign Immunity.

Federal Rule of Civil Procedure 12(b)(1) allows for a motion to dismiss an action based upon lack of subject matter jurisdiction. Sovereign immunity removes subject matter jurisdiction in lawsuits brought against the government unless the government has consented to suit. *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 425 (6th Cir. 2016). Thus, FRCP (12)(b)(1) is the appropriate method for seeking dismissal of a claim based upon immunity. “When the defendant challenges subject matter jurisdiction through a motion to dismiss, the plaintiff bears the burden of establishing jurisdiction.” *Hedgepeth v. Tenn.*, 215 F.3d 608, 611 (6th Cir. 2000) (citation omitted).

Sovereign immunity is guaranteed by the Eleventh Amendment, which provides: “[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.” U.S. CONST. amend. XI. “A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.” *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). The Sixth Circuit has recognized that there are three exceptions to the guarantee of sovereign immunity, one of which is

the exception set forth in *Ex parte Young*, 209 U.S. 123, 161–62 (1908).[6] *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008).

In *Ex parte Young*, the Supreme Court of the United States recognized that the Eleventh Amendment does not offer immunity when a state officer acts in violation of federal law. The Court explained:

> If the act which the state [official] seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.

*Id.* at 159–60. The Sixth Circuit has explained that "*Young* does not reach state officials who lack a 'special relation to the particular statute' and '[are] not expressly directed to see to its enforcement.'" *Russell*, 784 F.3d at 1047. "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Id.* at 1048. In other words, "[a] plaintiff must allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations." *Top Flight Ent., Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013). Nor does *Young* apply "when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Russell*, 784 F.3d at 1047. Thus, the *Young* exception depends upon a special relationship between the defendant and the challenged policy and enforcement or threat of enforcement.

Neither element is satisfied here. Ramsey, as the AOC Director, lacks a "special relation" to the alleged "policy and practice of withholding newly e-filed complaints" because he does not have the authority under Kentucky law to grant or deny access to newly filed Complaints before

---

[6] The other two exceptions to Eleventh Amendment immunity do not apply. Neither Ramsey nor AOC have consented to being sued in federal court. *See Sefa v. Kentucky*, 510 F. App'x 435, 437 (6th Cir. 2013). In addition, Congress has not abrogated Kentucky's Eleventh Amendment immunity through Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 338-340 (1989); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).

the clerk has processed them. As discussed, only the clerk has that access, and only the SCOKY has the authority to delegate that authority to AOC. In fact, AOC's website makes it clear that AOC "does not maintain court case records, is not the source of those records and cannot provide access to them."[7] Pursuant to KRS 30A.080, the Clerk of each county is responsible for maintaining "all records, files, dockets, and indexes." Because it is Kentucky Clerks who possess this duty, the Director of the Administrative Office of the Courts does not have a "special relation" to the alleged policy or practice described by the Plaintiff's Complaint.

Nor has Ramsey enforced or threatened to enforce policies related to court record access. The Sixth Circuit has explained that the phrase 'some connection with the enforcement of the act' does not diminish the requirement that the official threaten and be about to commence proceedings." *Russell*, 784 F.3d at 1047 (citing *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996)). Rather, it must be the case that action has occurred or is expected to soon occur. Here, the Plaintiff alleges that there is a policy and practice of withholding new civil complaints but fails to allege with any specificity how Ramsey, as the AOC Director, has instituted it, or enforces it.

Because the Kentucky Administrative Office of the Court is an agency of the Commonwealth of Kentucky and its Director does not fall under the *Ex Parte Young* exception, Ramsey, as sued in his official capacity, enjoys Eleventh Amendment immunity, and the lawsuit should be dismissed as a matter of law pursuant to Fed R. Civ. Pro. 12(b)(1).

**CONCLUSION**

For the multitude of reasons discussed herein, Plaintiff's Complaint must be dismissed.

---

[7] Kentucky Court of Justice, Request a Court Record homepage, available at: https://www.kycourts.gov/Pages/Request-Court-Records.aspx (last visited Nov. 3, 2025).

*/s/ Mitchel T. Denham*
Mitchel T. Denham
Trenton D. Adkins
McBrayer PLLC
500 W. Jefferson St., Suite 2400
Louisville, KY 40202
(502) 327-5400
mdenham@mcbrayerfirm.com
tadkins@mcbrayerfirm.com
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing has been served on all counsel of record via the Court's ECM/ECF system, this 3rd day of November 2025.

/s/ *Mitchel T. Denham*
Mitchel T. Denham